IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

CIVIL ACTION NO:_____

| | |
|---|---|
| CANDICE MICHELLE HARDWICK by and through her Parents and Guardians DARYL LEWIS HARDWICK and PRISCILLA LEA HARDWICK; <br><br> Plaintiffs, <br><br> vs. <br><br> MARTHA HEYWARD in her individual capacity and in her official capacity as Principal of Latta Middle School; <br><br> GEORGE H. LIEBENROOD, JR., in his individual capacity and in his official capacity as Principal of Latta High School, and the <br><br> BOARD OF TRUSTEES OF LATTA SCHOOL DISTRICT (Dillon County No.3, <br><br> Defendants. | COMPLAINT <br><br> JURY TRIAL DEMANDED |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs CANDICE MICHELLE HARDWICK , by and through her

Parents and Guardians DARYL LEWIS HARDWICK and PRISCILLA LEA HARDWICK,

seeking remedies for violation of CANDICE MICHELLE HARDWICK'S  right to free speech

and her heritage.  Defendants, contrary to law and pursuant to facially unconstitutional policies,

disciplined Candice based on the content of her expressive behavior when she attempted to

express pride in her Southern heritage and ancestry by wearing tee shirts bearing images of the

–1–

Confederate Battle flag.

## NATURE OF THE ACTION

1.      This is a civil action brought pursuant to 42 U.S.C. _ 1983 filed by plaintiffs Daryl Lewis Hardwick and Priscilla Lea Hardwick as Parents and Guardians of Candice Michelle Hardwick against Martha Heyward and George H. Liebenrood, Jr., in their individual capacities and in their official capacities as Principals respectively of the Latta Middle School and Latta High School.  Also joined as defendants in this action are Defendant Board of Trustees of Latta School District (Dillon County No. 3) (hereinafter "the Board") who are sued in their official capacities.   The plaintiffs have brought this action against the defendants because the defendants have, under color of law,  violated the constitutional rights and freedoms of the plaintiff,  Candice Michelle Hardwick,  to freedom of speech, free exercise of her religion, and freedom of individualized personhood.  They have done so by ordering her to partially disrobe and remove from her person  items of wearing apparel that display the Confederate Battle Flag (hereinafter referred to at times as "the flag").  Defendants have also ordered her not to come to school wearing such apparel, a directive that further compounds this constitutional violation.   Moreover, they have further violated her rights by disciplining her or threatening to discipline her for refusing to obey their commands to remove and not wear such items of clothing and have even forbidden her and others the right to publicly dissent from the school's decision.  Defendant Board of Trustees have been made aware of these abuses, and despite repeated requests to restore Candice's rights, have since 2004 upheld a policy interpretation of the Latta Middle School and Latta High School dress code that bans Confederate symbols in the face of no discernible disruption. Defendants are sued jointly and severally. Plaintiffs seek damages, declaratory judgment and temporary and permanent injunctive relief to redress Defendants' violation of Candice's

–2–

rights under the First, Fifth, Ninth and Fourteenth Amendments of the United States Constitution and relevant provisions of the South Carolina Constitution, as well as the recovery of costs and attorney fees pursuant to 42 U.S.C. _ 1988.

## PARTIES

2.      The plaintiffs Daryl Lewis Hardwick (hereinafter referred to as "Daryl Hardwick") and Priscilla Lea Hardwick (hereinafter referred to as "Priscilla Hardwick") are the parents of the minor plaintiff Candice Michelle Hardwick (hereinafter referred to as "Candice."). They are all residents of Dillon County, South Carolina. Candice is a student in good standing at Latta High School, a public school located in Dillon County. Prior to her attendance at Latta High School, Candice attended Latta Middle School.

3.      Defendant Martha Heyward (hereinafter "Heyward") is the principal of Latta Middle School and responsible for overseeing its operations. Under the Board's Middle School dress code policies in place during the 2002-2003 / 2003-2004 school year the principal had the authority to determine the language or symbols that were "offensive" and that may be banned from Latta Middle School. She is sued in her individual and official capacity.

4.      Defendant George H. Liebenrood, Jr. (hereinafter "Liebenrood") is the principal of Latta High School and responsible for overseeing its operations. Under the Board's dress code policies and the Latta High School Dress Code the principal has the authority to determine the language or symbols that are "offensive" and that may be banned from Latta High School. He is sued in his individual and official capacity.

5.      Defendant Board of Trustees of Latta School District (Dillon County No. 3) is a political subdivision of the State of South Carolina that is amenable to suit pursuant to South Carolina

Code of Laws _ 59-17-10.  It has the authority, pursuant to South Carolina Code of Laws _ 59-19-10 to control and manage all the schools in the district, including Latta Middle School and Latta High School. It also has the power to formulate, implement and interpret a dress code policy for all students pursuant to __ 59-19-90(3) & 110.

## JURISDICTION AND VENUE

6.      This action is brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, which provides redress to persons who have been deprived of their civil rights under color of state law and pursuant to 28 U.S.C. § 1343 (a) (3), (4) and § 1331, provisions which confer jurisdiction upon this Court to adjudicate violations of the various federal civil rights acts and applicable provisions of the United States Constitution.

7.       The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act,   28 U.S.C. __ 2201 and 2202.  Remedies are provided by 42 U.S.C. _ 1983.

8.      Venue properly lies in the Florence Division of the United States District Court of the District of South Carolina pursuant to 28 U.S.C. § 1391 since the events that underlie the plaintiffs' claims occurred in that place and because that is where all of the defendants reside and work.

9.       Plaintiffs also assert that this court has pendent jurisdiction of Plaintiff's state constitutional claims to freedom of speech,   free exercise of her religion and due process are guaranteed by Article I, Sections 2 and 3 of the South Carolina State Constitution.

## FACTS

10.       Candice is 15 years old  Sophomore of Confederate ancestry at Latta High School,

–4–

which she has attended since the Fall of 2004.  Prior to Latta High School, Candice attended Latta Middle School.

11.        The pertinent and applicable dress code for Latta Middle School during the time Candice attended states that: "Generally student dress is considered appropriate as long as it does not distract others, interfere with the instructional programs, or otherwise cause disruption.".  Number 9 of the Dress code states: "Students may not wear clothing that displays profane language, drugs, tobacco, or alcohol advertisements, sexual innuendoes or anything else deemed to be offensive." (attached and incorporated into this Complaint by reference as Exhibit "A").  Nothing in the dress code,  given to students or parents, prohibits the wearing of Confederate symbols on student clothing.

12.        The pertinent and applicable dress code for Latta High School for the 2004-2005 and 2005-2006 School year states that " Latta High School students are to come to school in a neat and clean manner each day.  Dress is casual, but some styles, which may be appropriate outside of school, are clearly inappropriate for school..." (attached and incorporated into this Complaint by reference as Exhibits "B" and "C").    Nothing in the dress code of either school year,  given to students or parents, prohibits the wearing of Confederate symbols on student clothing.

13.        On various occasions prior to April 2003, Candice has worn to school without incident or interference from school officials,  various items of apparel, in good taste and with her parent's approval,  upon which the Confederate Battle Flag was displayed.  She wore these items of clothing as a symbol of respect, veneration and esteem for her Confederate ancestors and their descendants, particularly her grandparents and parents and as a personal expression of her Christian religious faith.

14.        Candice has consistently worn such clothing in a non-intrusive and non-disruptive

–5–

manner. In doing so she has always respected the ethnic, racial, religious and social backgrounds of other students who do not share her Confederate ancestry and her dedication to the Confederate identity and cause.

15. Candice has never engaged in any form of ethnic or racial harassment, intimidation or defamation and she has never encouraged any other person to engage in such conduct.

16. On or about April 2003 defendant Heyward, the principal of Latta Middle School, demanded that Candice remove her "Southern Chic" t-shirt with a small Confederate Battle Flag displayed thereon (a photo/description of the shirt is attached and incorporated by reference as Exhibit "D") despite the fact that Candice was doing nothing to disrupt the orderly functioning of the high school and was simply going about her business of attending school and getting her education.

17. In late January 2004, a Latta Middle School teacher made Candice cover up a Dixie Angels shirt (a photo of the shirt is attached and incorporated by reference as Exhibit "E"), again despite the fact that the shirt was not disruptive or distracting.

18. In early February 2004, Heyward removed Candice from class for wearing a "Southern Girl" tee shirt (a photo of the shirt is attached and incorporated by reference as Exhibit "F") despite the fact that the shirt was not disruptive or distracting.

19. Sometime in mid February 2004 Candice was sent to the office and made to change her shirt for wearing a tee shirt honoring Black Confederates (a photo of the shirt is attached and incorporated by reference as Exhibit "G"), despite the fact that the shirt was not disruptive or distracting.

20. Sometime in mid February 2004, Heyward denied Candice the right to wear a protest shirt bearing the United States flag and its association with slavery (a photo of the shirt is attached

–6–

and incorporated by reference as Exhibit "H") and could not or would not explain to Daryl and Priscilla Hardwick the material or substantial disruption caused by Candice's shirts, save to say: "it takes longer for the teachers to calm the classes down when Candice wears the shirts, " a charge Candice denies.

21.     In late February 2004, Candice was sent to the office for refusing to change her "Dixie Chicks" tee shirt (a photo of the shirt is attached and incorporated by reference as Exhibit "I"), despite the fact that the shirt was not disruptive or distracting. This was the first time that Candice did not comply with the unconstitutional directives of school officials. Her Mother was called and upon arrival at the school supported her daughter's stand for free speech. Priscilla Hardwick talked to Dr. John Kirby, the Latta Schools Superintendent, who after being given the facts refused to prevent further violation of Candice's rights. Candice was given ISS (in-school suspension) for refusing to change her shirt and was denied lunch. During ISS Candice drew a picture of Robert E. Lee but was forced by a teacher to tear it up. Candice came home with a stomach ache, because she had not been able to eat at school.

22.     In early March of 2004, Candice and another girl wore a "Girls Rule" tee shirt (a photo of the shirt is attached and incorporated by reference as Exhibit "J"). Candice was taken to the office, written up on the direction of defendant Heyward, and made to change her shirt. A school administrator threatened Candice with removal from the track team if she wore another shirt to school and told her "You are only being used by the SCV (Sons of Confederate Veterans) and your parents."

23.     At about the same time as Candice wore the "Girls Rule" tee shirt, a student was made to cover up a protest tee shirt that said: "Official School Policy - Diversity and Tolerance for all Cultures (Except Southerners) (a photo of the shirt is attached and incorporated by reference

–7–

as Exhibit "K"), another student was made to cover another "Dixie Outfitter's" shirt and several days later a female student was made to remove a small Confederate necklace.

24.    In the middle of March of 2004 Priscilla Hardwick requested a copy of the School's Student Handbook and a written copy of the "ban on Confederate symbols." Heyward gave Priscilla Hardwick a copy of the new Handbook, but would not respond to repeated requests for a written copy of the policy banning Confederate flags.

25.    On April 12, 2004, Daryl and Priscilla Hardwick wrote the Latta School Superintendent requesting that he remove any disciplinary actions from Candice's school records, informing him that the school was violating their daughter's rights, that any disruption was caused by Heyward not by Candice, that Candice was denied the right of dissent, that other students displayed pride in their heritage AND flagrantly violated the dress code, that Candice viewed the flag as an ancestral and religious symbol, that Candice be accommodated in her viewing the flag as a venerated symbol of her Christian religious faith, noted the violation of Candice's inalienable right to her heritage and that the schools anti-flag policy unfairly stigmatized her as a racist. The letter concluded with a suggestion for a tolerance seminar to educate students, teachers and educators regarding the meaning of the Confederate Battle flag.  Attached was a letter from Black Confederate activist, H.K. Edgerton, who offered to teach a tolerance seminar for the school district (a copies of the Hardwick & Edgerton letters are attached and incorporated by reference as Exhibit "L")

26.    Shortly after the Hardwick letter (Exhibit "L") was sent to Dr. Kirby, Candice was screamed at and berated by a school administrator because Candice returned to school after hours wearing a "protest shirt." that said: " Public School Should Educate Not Discriminate Against Southern Heritage"  Candice was reduced to tears. (a photo of the shirt is attached and incorporated

–8–

by reference as Exhibit "M")

27.        On May 12, 2004 the Hardwick's received a response from Harold Kornblut Chairman of the Latta School District Board of Trustees.  Kornblut's letter was not responsive to the Hardwick's questions and concerns and cited one alleged racial pejorative issued by a white student in a conversation with Liebenrood over the flag, the controversial nature of the flag and its use by extremist groups and the segregated Latta Schools of a generation or more ago. Kornblut did not offer the Hardwick's a hearing on the matter (A copy of the letter is attached and incorporated by reference as Exhibit "N")

28.      On November 10, 2004, Daryl and Priscilla Hardwick petitioned Dr. Kornblut to reconsider  the Board's ban on Confederate symbols, asking again for the school to show what disruption justified  the ban, asked the Board, AGAIN to specifically consider accommodating Candice's religious beliefs  as they pertained to the Confederate Battle flag and again urged the Board to consider a tolerance seminar where modern African-American Confederates could dispose of bigoted assumptions about Confederate symbols (a copy of the letter is attached and incorporated by reference as Exhibit "O")

29.      On December 17, 2004, Kornblut responded to the Hardwick's letter, declining their request for a rehearing.  Kornblut justified the continued ban by alleging unsubstantiated derogatory remarks and racial slurs made by students and claimed Candice was made aware of the school's expectations through the dress code printed in the student handbooks and "actual notice and warnings" (a photo of the shirt is attached and incorporated by reference as Exhibit "P")

30.       In May of 2005, Principal Liebenrood called Candice out of class and made her change a "Daddy's Little Redneck" tee shirt (a photo of the shirt is attached and incorporated by

–9–

reference as Exhibit "Q"). Candice then put on a "Jesus and the Confederate Battle flag, Banned from our Schools but forever in our hearts" t-shirt (a photo of the shirt is attached and incorporated by reference as Exhibit "R"). Candice produced in succession three (3) other "protest" shirts: "Public School Should Educate Not Discriminate Against Southern Heritage (see Exhibit "M"), "Honorary Member of the FBI (Federal Bigot Institutions) (a photo of the shirt is attached and incorporated by reference as Exhibit "S"), "Freedom of Speech for All (Except Southerners)" (a photo of the shirt is attached and incorporated by reference as Exhibit "T") but was forbidden to wear any of them even though none displayed the Confederate Battle flag. Liebenrood gave Candice a "Pepsi" shirt to wear. At the time of this incident, Candice's shirt (exhibit "Q") was causing no apparent disruption.

31.     At the beginning of the current school year, Candice wore a shirt for several days, without incident or disruption, depicting the Statehouse, the Statehouse Confederate Monument and the Confederate Battle flag that flies in front of it. (a photo of the shirt is attached and incorporated by reference as Exhibit "U"). When brought to his attention, Liebenrood took Candice out of class and made her change shirts. Candice told Liebenrood that she would comply, but that he was " violating her civil and constitutional rights." Liebenrood told Candice: "You haven't learned anything from last year!"

32.     On August 26, 2005, counsel for the Hardwick's requested permission to appear before the Board at its September 13, 2005 meeting to discuss an amicable resolution of the Board's ban on Confederate symbols. Counsel was informed at the meeting that he would not be able to speak. A letter dated September 8 but not received until after he had left for South Carolina also informed him of the Board's refusal and suggested he contact the Board's counsel. (a copy of the correspondence is attached and incorporated by reference as Exhibit "V" and "V-1").

–10–

33.     On February 10, 2006 counsel for Candice and her parents sent a final letter attempting to amicably resolve the free speech, religious accommodation and lack of disruption issues requested in previous letters to the Board. Counsel attached to this letter all previous written communications with School officials. Counsel for he Board responded on February 16, 2006 requesting until the March 14, 2006 regularly scheduled meeting of the Board to attempt to amicably resolve the dispute. Candice's counsel answered on February 23, 2006. The correspondence is attached and incorporated by reference as Exhibits "W" minus attachments being previous written communications, "W-1" and "W-2").

34.     Counsel for the Board sent a final letter on March 24, 2006 re-urging the Board's previous positions, offering no substantive response to the issues raised by the Hardwick's, finally denies Candice a religious accommodation while requesting further information on Candice's beliefs AND allows Candice to wear protest shirts sans Confederate flags while denying that the Latta School District had ever banned the wearing of protest shirts (a copy of the letter is attached and incorporated by reference as Exhibit "X"). This litigation follows, although Candice's religious discrimination claim is being handled administratively pursuant to the Board finally agreeing to accept submissions from Candice on the Christian symbolism of the Confederate Battle flag.

35.     Candice has not worn any Confederate flag or protest shirts to school since September 2005.

36.     In all her dealings with school officials over her tee shirts and violation of her rights ongoing since she was in the seventh grade, Candice has been firm in her beliefs that her rights were being violated, polite in manner and speech and save for those instances noted, has complied with the requests made of her. When she has politely refused to comply, it has been with the full support and

backing of her parents.

37.    At the time that Candice was ordered to remove the shirts described in __ 16, 17, 18, 19, 21, 22, 23, 30 and 31, the offending symbol in each case was either a Confederate Battle flag (or variation) or a shirt protesting the actions of the School in banning the Confederate Battle flag. None of the protest shirts contained the Confederate Battle flag and were apparently banned solely for their written content. During the times at Latta Middle and High School described in __ 16 -19, 21-23, 30-31, there were no events transpiring at either school that showed or even tended to show that the display of Candice's (and others) shirts materially and substantially interfered with the appropriate discipline and good order of Latta Middle or High School.    Heyward's and Liebenrood's demands that Candice remove said shirts and that she not thereafter wear items of clothing with the Confederate Battle flag inscribed thereon was instead the product of undifferentiated fear and mere apprehension of disturbance on their part  unsubstantiated by any objective circumstances showing or tending to show that her apparel was conducive to the breakdown of peace and good order at the school.

38.    During the period, 2004 to the present, other students were punished at Latta Middle and High School for wearing Confederate-themed shirts, protest shirts and jewelry and shirts in protest of the school's ban on Confederate symbols.

39.    Heyward and Liebenrood ordered Candice to partially disrobe and change her shirts despite the fact that the schools' dress code does not prohibit the wearing of tee shirts and other wearing apparel upon which messages and emblems can be inscribed and displayed.  Latta Middle School merely prohibited wearing apparel which "distract(s) others, interfere(s) with instructional programs, or otherwise cause(s) disruptions, or anything else deemed to be offensive;" while Latta

High School advises its students that: "some styles, which may be appropriate outside of school, are clearly inappropriate for school." The High School further bans shirts with "obscene/derogatory sayings," nothing of which warns Candice and others that Confederate shirts or protest shirts are "inappropriate."

40.    Ms. Heyward and Mr. Liebenrood ordered Candice to remove her shirts despite the fact that they and other administrators and teachers at Latta High School have allowed other students to wear controversial "message" t-shirts and similar items of clothing. This apparel has frequently been inscribed with and has displayed sayings and emblems indicative of ethnocentric, political and religious causes which are offensive to substantial segments of the community of Dillon County, including members of the student body at Latta Middle School. Nevertheless Ms. Heyward and Mr. Liebenrood has to the knowledge of the plaintiffs never disciplined other students who have worn such apparel to Latta Middle School in the manner that they punished Candice, nor even responded to the Hardwick's own complaints of offensive clothing worn at Latta Middle and High School.

41.    During the Fall of 2003, Candice learned of the Christian religious significance of the Confederate Battle flag and in addition to its symbolism of her ancestry and heritage, began to see the Confederate Battle flag as a venerated symbol of her Christian religious faith in that the flag contains the cross of Saint Andrew, Christ's first disciple and also the white "X" symbolizing an early Christian abbreviation for Christ.

42.    The defendants Heyward, Liebenrood and the Board have consistently refused to inform the plaintiffs or their counsel of any specific and objective facts and circumstances present at the school or within its immediate environs that would have justified the actions of defendants Heyward and Liebenrood in demanding that Candice remove items of clothing upon which the flag is displayed

–13–

or inscribed.

43.     The defendants have refused to consider any measure or take any action that would constitute a reasonable accommodation of Candice's right to the free exercise of her religious faith as a practice, belief or observance in displaying the St. Andrew's Cross, the principal component of the Confederate Battle Flag.  In a similar vein they have refused to consider any less restrictive alternatives in dealing with any complications and difficulties that might arise from her display of this emblem other that the outright ban of it within the precincts of the school, conduct on their part which constitutes total and complete censorship of a political and social viewpoint solely based upon its content.

44.     The defendants Board of Trustees, have consistently supported, endorsed, upheld and ratified the unconstitutional conduct of defendant's Heyward and  Liebenrood as herein described.

## COUNT ONE

## THE VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH AND EXPRESSION

45.     The matters set forth in paragraphs 10 through 44 of the complaint constitute a flagrant and continuing violation of the plaintiff Candice Hardwick's fundamental First and Fourteenth Amendment rights to freedom of speech and expression.

46.     As a direct and proximate cause of their actions, the Defendants, under color of law, deprived Candice of her First Amendment rights secured to her under the First and Fourteenth Amendments of the United States Constitution, by their banning Confederate symbols without constitutionally  adequate justification or cause.

–14–

47.     As a direct result of the Defendants' actions, jointly and severally, in violating the First Amendment rights of Candice, she has suffered damages, including but not limited to the chilling of her constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's constitutional rights and sincerely held beliefs.

## COUNT TWO

## THE VIOLATION OF THE RIGHT TO THE FREE EXERCISE OF RELIGIOUS FAITH

48.     Paragraphs 10 through 44 of this complaint are realleged and are incorporated into this count by reference.

49.     The action of the defendants noted above constitutes a flagrant and continuing violation of Candice Hardwick's rights to the free exercise of her religious faith guaranteed by the First and Fourteenth Amendments to the United States Constitution.   Candice considers the honoring of her forebears by the wearing of Confederate symbols to be an integral and important aspect of her Christian religious observance.  See Deuteronomy 5:16  " Honor thy father and thy mother, as the Lord thy God hath commanded thee, that thy days may be prolonged...."(KJV).  For Candice the wearing of such attire transcends the matter of identifying with a particular ethnic and cultural heritage.  Because of her perception that some in her community have ignorant, prejudiced or bigoted opinions regarding the Confederate Battle flag or are ignorant of its religious meaning, displaying the flag is for her a moral and religious imperative.

50.     As a direct and proximate cause of their actions, the Defendants, under color of law,

–15–

deprived Candice of the free exercise of her religion, a right secured to her under the First and Fourteenth Amendments of the United States Constitution, by their banning Confederate symbols without constitutionally adequate justification or cause.

51.    As a direct result of the Defendants' actions, jointly and severally, in violating the free exercise rights of Candice, she has suffered damages, including but not limited to the chilling of her constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's constitutional rights and sincerely held beliefs.

<u>**COUNT THREE**</u>

<u>**THE VIOLATION OF THE RIGHT TO PERSONHOOD AND
AUTONOMY GUARANTEED BY THE NINTH AMENDMENT
TO THE UNITED STATES CONSTITUTION**</u>

52.    Paragraphs 10 through 44 of this complaint are realleged and are incorporated into the this count by reference.

53.    The Ninth Amendment to the United States Constitution states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

54.    The acts and conduct of the defendants constitute a flagrant and continuing violation of the rights of the plaintiff Candice Hardwick pursuant to this Amendment because this act of censorship constrains her to denigrate if not to abrogate her identity as a Confederate Southerner. She is being forced by the actions of the defendants to surrender a fundamental aspect of her personhood and identity in contravention of the guarantees of that Amendment as well as the protections of her identity and personhood afforded to her by the First and Fourteenth Amendments

–16–

to the United States Constitution.

55.     As a direct and proximate cause of their actions, the Defendants, under color of law, deprived Candice of her First Amendment rights secured to her under the First and Fourteenth Amendments of the United States Constitution, by their banning Confederate symbols without constitutionally adequate justification or cause.

56.     As a direct result of the Defendants' actions, jointly and severally, in violating the Ninth Amendment rights of Candice, she has suffered damages, including but not limited to the chilling of her constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's constitutional rights and sincerely held beliefs.

## COUNT FOUR

## THE VIOLATION OF THE RIGHT OF DUE PROCESS

57.     Paragraphs 10 through 44 of this complaint are realleged and are incorporated into this count by reference.

58.     The action of the defendants noted above constitutes a flagrant and continuing violation of Candice Hardwick's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

59.     Fundamental due process requires school disciplinary rules must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties and not so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. And further require that the school give adequate notice of the school disciplinary rules so as to allow a student and her parents to govern her conduct and or action in a

fashion that would comport with the school restrictions.

60.    Defendant School Board's dress code policies are both impermissibly vague and overbroad, sweeping with in their breath content based constitutionally protected expression and speech. Candice has been told that she is in violation of the dress code without ever being told or shown which part of the dress code she is in violation of, nor upon request was her Mother given a written copy of the ban on Confederate symbols.

61.    Candice has been punished, threatened with punishment and made to cover up her shirts, while being denied for almost three years an adequate explanation for the "necessity" of the schools actions or even a responsive answer to her parent's concerns and suggestions for amelioration of the problem, including a face to face hearing with the board.

62.    As a direct and proximate cause of their actions, the Defendants, under color of law, deprived Candice of her due process rights secured to her under the Fifth and Fourteenth Amendments of the United States Constitution, by their enforcement of a vague and overbroad dress code, their denial of effective administrative relief to Candice, or responsiveness to questions asked by a citizen to a public servant.

63.    As a direct result of the Defendants' actions, jointly and severally, in violating the due process   rights of Candice, she has suffered damages, including but not limited to the chilling of her constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's constitutional rights and sincerely held beliefs.

–18–

## COUNT FIVE

## THE VIOLATION OF THE RIGHT OF EQUAL PROTECTION

64.     Paragraphs 10 through 44 of this complaint are realleged and are incorporated into this count by reference.

65.     The action of the defendants noted above constitutes a flagrant and continuing violation of Candice Hardwick's equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

66.     The Defendants actions in failing to adhere to their own procedural and/or substantive rules, procedures and policies were arbitrary and capricious.

67.     Defendants enforcement of a ban on Confederate symbols from 2003 to the present constitutes the Defendants inconsistent application of procedures to its students.

68.     Defendants action in failing to adhere to their own procedural and/.or substantive rules, procedures and policies resulted in Candice and others of Confederate ancestry being singled out for disparate treatment, placing Candice and others of Confederate ancestry in a special class, to which she and others of Confederate ancestry were treated differently than other similarly situated individuals or groups.

69.     Defendants action in failing to adhere to their own procedural and/.or substantive rules, procedures constitutes a gross abuse of governmental power.

70.     Defendants action in failing to adhere to their own procedural and/.or substantive rules, procedures constitutes a personal and knowing disregard and/or deliberate indifference for Candice's legal rights.

71.     As a direct and proximate cause of their actions, the Defendants, under color of law,

deprived Candice of equal protection rights secured under the Fourteenth Amendment of the United States Constitution, by their arbitrary and capricious interpretation of dress code policies and the facts leading to their oral implementation, by their utter disregard for the equal application of law and procedure and school policies to Candice.

72.    As a direct result of the Defendants' actions, jointly and severally, in violating the civil rights of Candice, she has suffered damages, including but not limited to the chilling of her constitutional rights, emotional damages, embarrassment, stress and/or mental anguish and all other damages directly and or consequentially associated with the deprivation of one's constitutional rights and sincerely held beliefs.

## COUNT SIX

## SOUTH CAROLINA CONSTITUTIONAL CLAIMS

73.    Plaintiff repeats, reiterates, and re-alleges as part of this cause of action each and every allegation contained in Paragraphs 10 through 44 and 45 through 72 with the same force and effect as if fully set forth herein.

74.    In addition to a determination under federal law, Candice specifically pleads that all the allegations, claims and remedies  in Counts One, Two and Four of this Complaint be ruled on and tried by a jury pursuant to the South Carolina Constitution.

**WHEREFORE**, the plaintiffs pray that this Court will do the following:

1.     Enter a declaration that the defendants' actions have violated the constitutional rights of Candice Michelle Hardwick vouchsafed to her by applicable provisions of the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

2.     Enter a preliminary injunction against the defendants prohibiting them from

–20–

interfering with her First Amendment rights in the manner that they have done  since 2003.

3.    Order the expungement of the school disciplinary record of Candice Hardwick because it may indicate that she has violated the schools rules and regulations by wearing the clothing referenced in this complaint.

4.    Enter judgment against defendants Heyward and Liebenrood in their individual capacities on counts one through six of this complaint in an amount to be determined at trial, plus punitive damages, attorneys' fees, interest and costs.

5.    In the alternative without waiving any of the foregoing, enter judgment against defendants Heyward, Liebenrood and Board of Trustees in their official capacities on counts one through six of this complaint in an amount to be determined at trial plus damages, attorneys' fees, interest and costs, or judgment in any combination of individual and official capacity liability as found by the jury or trier of fact and comportable under the law.

6.    Enter a permanent injunction against defendants prohibiting them from engaging in future violations of the plaintiffs' constitutional rights in the manner described herein.

7.    Award the plaintiffs such other relief as this Court may deem just and equitable.

I have read the foregoing Complaint and hereby certify that the aforementioned pleading is true and accurate to the best of my information and belief.  I so swear under the penalties of perjury.


_____
Candice Michelle Hardwick, Plaintiff


_____
Priscilla Lea Hardwick, Parent and Guardian

–21–

This 30 day of March 2006.

Respectfully submitted,

LAW OFFICES OF LOURIE A. SALLEY, III
101 East Main Street
Lexington, SC 29072
Telephone: 803- 957-1036
Facsimile:  803- 957-8477
Email: L8Pilot@aol.com


By: _____
LOURIE A. SALLEY, III
Attorney at Law
Federal Admission Number: 4792

Of Counsel:

Kirk David Lyons
Federal Admission Number: 8472
SOUTHERN LEGAL RESOURCE CENTER, INC.
1 Arosa Court
P.O.Box 1235
Black Mountain, NC 28711-1235
Telephone: 828-669-5189
Facsimile: 828-669-5191
Email: slrc@slrc-csa.org

**ATTORNEYS FOR PLAINTIFF**