IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CANDICE MICHELLE HARDWICK<br>by and through her Parents and Guardians<br>DARYL LEWIS HARDWICK and<br>PRISCILLA LEA HARDWICK,<br><br>        Plaintiff,<br><br>  vs.<br><br>MARTHA HEYWARD in her individual<br>capacity and her official capacity as<br>Principal of Latta Middle School,<br><br>GEORGE H. LIEBENROOD, JR., in his<br>individual capacity and his official capacity<br>as Principal of Latta High School, and the<br><br>BOARD OF TRUSTEES OF LATTA<br>SCHOOL DISTRICT<br>(Dillon County No.3),<br><br>        Defendants. | C.A. No. 4:06-1042-TLW |

# ORDER

On April 1, 2006, the plaintiff Candice Michelle Hardwick (hereinafter "plaintiff") by and through her parents, Daryl Lewis Hardwick and Priscilla Lea Hardwick, filed a complaint against defendants Martha Heyward, in her individual capacity and her official capacity as Principal of Latta Middle School; George H. Liebenrood, Jr., in his individual capacity and his official capacity as Principal of Latta High School; and the Board of Trustees of Latta School District (Dillon County No. 3) (hereinafter "defendants"), alleging causes of action for violation of the right to freedom of speech and expression, violation of the right to the free exercise of religious faith, violation of the

1

right to personhood and autonomy guaranteed by the Ninth Amendment to the United States Constitution, violation of the right to due process, violation of the right to equal protection; and pursuant to the South Carolina Constitution, for violation of the right to freedom of speech and expression, violation of the right to free exercise of religious faith, and violation of the right to due process. Plaintiff filed a motion for a preliminary injunction on September 15, 2006 (Doc. #32) and defendants responded on September 19, 2006. (Doc. #33). A hearing was held on the motion for preliminary injunction on December 20, 2006. The motion is ripe for disposition.

## FACTS

Daryl Lewis Hardwick and Priscilla Lea Hardwick are the parents of the minor plaintiff Candice Michelle Hardwick. Plaintiff is a junior at Latta High School, located in Dillon County, South Carolina. Plaintiff states she has Confederate ancestry. The plaintiff alleges that in April of 2003, while plaintiff attended Latta Middle School, she was told to remove a t-shirt which displayed a Confederate Battle Flag. (Doc. #1). The plaintiff alleges that prior to April, 2003, that she wore t-shirts displaying the Confederate Battle Flag without incident. (Doc. #1). Plaintiff alleges various similar incidents in which she was told to remove or cover up t-shirts displaying the Confederate Battle Flag while she was attending Latta Middle School. (Doc. #1). Plaintiff alleges other similar incidents in which she was asked to remove or cover up t-shirts displaying the Confederate Battle Flag while she was attending Latta High School. (Doc. #1). Plaintiff alleges that defendant Liebenbrood told her to remove or cover up "protest" t-shirts while she attended Latta High School. (Doc. #1).[1] The plaintiff has not worn any Confederate flag or "protest" t-shirts to school since

---

[1]Plaintiff filed exhibits which depicted the various t-shirts worn by the plaintiff. A number of these have been labeled "protest" t-shirts. The "protest" t-shirts do not actually display the Confederate Battle Flag. The defendants have agreed to permit the plaintiff to wear

September of 2005. (Doc. #1).

**DISCUSSION**

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power to be applied 'only in [the] limited circumstances' which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med.Corp., 952 F.2d 802, 811 (4th Cir. 1991)(quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3rd Cir. 1989)). "The standard for preliminary injunctions is established in this Circuit by Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir.1977)." Id. at 812. "Blackwelder clarified that a hardship balancing test applies to determine the granting or denial of a preliminary injunction." Id. "Four factors must be considered: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." Id. (citing L.J. By and Through Darr v. Massinga, 838 F.2d 118, 120 (4th Cir. 1988)). These four factors are commonly referred to as the "Blackwelder factors." "[T]he '[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction.'" Id. (quoting Technical Publishing Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984)).

The primary issue before the Court, at this stage in the proceeding, is whether plaintiff's First Amendment rights to free speech and expression have been violated by the school's prohibition of t-shirts bearing the Confederate Flag. The Supreme Court has recognized that "students do not shed

---

these "protest" t-shirts that do not display the Confederate Battle Flag (Exhibits "H," "M," "U," "T," and "K"). Therefore, these "protest" t-shirts are not in dispute, and thus, not before the Court at this time. This Order addresses only the t-shirts which display the Confederate Battle Flag in whole or part including exhibit "R" (Jesus and the Confederate Battle Flag).

their constitutional rights to freedom of speech or expression at the schoolhouse gate" but that these rights of students in a public school "are not automatically coextensive with the rights of adults in other settings." Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Bethel Sch. Dist. v. Fraser, 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). The matter before the Court involves the tension between a students' First Amendment rights and the authority of school administrators to curtail those rights to avoid "disruption" of school activities. Tinker v. Des Moines Indep. Community Sch. Dist., 393 U.S. 503 (1969).

In Governor Wentworth Reg. Sch.v. Hendrickson, the school district sought declaratory judgment that they had acted within constitutional limits in banning a student from wearing a "No Nazi's" patch. Governor Wentworth Reg. Sch.v. Hendrickson, 421 F.Supp.2d 410 (D.N.H. 2006). Following the Supreme Court precedent of Tinker, the Court in Hendrickson concluded that the standard to be applied in a case involving the tension between a student's exercise of First Amendment rights and the rules of school authorities is to determine: "whether the record establishes that school authorities prohibited the 'No Nazis' patch based upon their reasonable forecast that allowing it to be worn would likely have caused a substantial disruption of, or material interference with school activities." Id. at 423. The Fourth Circuit addressed school authority suppression of students First Amendment rights in Quaterman v. Byrd, 453 F.2d 54 (1971). In Quarterman, the Court stated that "if a reasonable basis for such a forecast exists, it is not necessary that the school stay its hand in exercising a power of prior restraint 'until disruption actually occurred.'" Quarterman 453 F.2d at 58 (quoting Butts v. Dallas Ind. Sch. Dist., 436 F.2d 728, 731 (5th Cir. 1971). Pursuant to Quarterman, no showing of actual violence or prior substantial disruption is apparently required

if the school authorities have a reasonable basis for their belief that a substantial disruption will occur.

In Phillips v. Anderson County School District Five, the Court used the reasonable forecast standard. Phillips v. Anderson County School District Five, 987 F.Supp. 488 (D. S.C. 1997). In Phillips, the plaintiff sought to wear a Confederate Flag jacket to middle school. The Court looked to the evidence of record and concluded that evidence of past disruptions caused by wearing of the Confederate Flag was sufficient to support a "forecast of likely disruption," thus upholding school officials' ban of the Confederate Flag jacket. Phillips, 987 F.Supp. 488, 493 (D. S.C. 1997). The Court granted summary judgment for the defendants concluding that at "Lakeside Middle School, [a student's] right to wear the Confederate Flag must yield to the school's interest in affording his classmates an educational environment conducive to learning and, as much as possible, free from disruptions and distraction." Id.

Plaintiff filed this action alleging that defendants violated her First and Fourteenth Amendment rights by preventing her from wearing apparel displaying the Confederate Battle Flag and by discriminating against her in the manner in which they enforce the school dress code. (Doc. #36). Plaintiff seeks a preliminary injunction against defendants to enjoin defendants from prohibiting the plaintiff from wearing t-shirts that display the Confederate Battle Flag.

Applying the Blackwelder factors, the Court has carefully considered the irreparable harm that each party will suffer depending upon the determination made by this Court. The plaintiff asserts that she will suffer irreparable harm if the injunction is denied because she will soon graduate from high school and be unable to display the Confederate Battle Flag on t-shirts while attending Latta High School, thus depriving her of her First Amendment rights to free speech and expression.

Therefore, the plaintiff asserts, the proceedings in this matter may not be resolved before she graduates and she will have no opportunity to wear the apparel at issue.

The defendants assert that they will suffer irreparable harm if the injunction is granted because allowing the plaintiff to display the Confederate Battle Flag will lead to fights or other substantial disruptions in the school. If the Court granted the injunction, then the status quo would be altered and the Court would essentially be compelling school officials to allow the plaintiff to wear potentially disruptive clothing while stripping school officials of their authority to regulate or censor the cause of the disruptions. Thus if granted, the defendants assert they would suffer the irreparable harm of substantial disruptions to the school environment potentially including physical harm to students.

Having considered the first and second Blackwelder factors, the Court concludes that granting the injunction, at this stage, would arguably cause greater harm to the defendants due to the likelihood of substantial disruption of the education process or harm to the students.

Having considered the irreparable harm that each party will suffer, the Court analyzes the likelihood that the plaintiff will succeed on the merits. Blackwelder Furniture Co., 550 F.2d 189 (4th Cir.1977). Although courts are reluctant to restrain constitutionally protected rights, they have allowed school officials to act when their actions do not breach the parameters of a constitutional right–the state action taken in this case to prevent substantial disruption of the educational process. Pursuant to Tinker and Hendrickson, the standard to be applied in this case is whether the record establishes that school authorities prohibited the displaying of the Confederate Battle Flag clothing based upon their reasonable forecast that allowing the flag to be displayed would likely cause a substantial disruption of, or a material interference with, school activities.

At this stage of the proceeding, this Court is not prepared to conclude that the plaintiff will prevail on the merits because there is evidence in the record which arguably supports a "reasonable forecast" that allowing the Confederate Flag to be worn on clothing would likely have caused a "substantial disruption" or "material interference" with school activities. Governor Wentworth Reg. Sch.v. Hendrickson, 421 F.Supp.2d 410, 423 (D.N.H. 2006). Specifically, the defendants submitted affidavits regarding past disruptions involving the wearing of the Confederate Battle Flag and affidavits from students expressing their belief and expectation that there is an imminent probability that fights would occur if the plaintiff was allowed to display the Confederate Battle Flag on t-shirts while on the school grounds. (Doc. #36). An African-American student, Colette Hamlin, stated that if the Confederate Battle Flag is allowed to be displayed that "there will be disruptions and inevitable altercations." (Doc. #36, Affidavit of Collette Hamlin). The President of the student body, Angelica Akia Williams, an African-American, stated: "The rebel flag and it's past brings too much confusion and turmoil into schools. Kids get offended by the rebel flag. The wearing of the flag in school will only bring more harm than good. Fights will break out and there will be a disaster." (Doc. #36, Affidavit of Angelica Akia Willaims).

Pursuant to Blackwelder, the Court has carefully considered the public interest factor. Plaintiff argues that the public benefits from the exercise of protected rights, and that, the public benefits more specifically from the wearing of the disputed t-shirts because they serve to educate the student body about the history of the confederacy. Defendants argue that the t-shirts are offensive to half of the student body, which is African-American. Defendants argue that the public benefits from a safe school environment, and that granting the injunction would likely lead to substantial disruptions and violence at Latta High School. Certainly, the public benefits from the exercise of

constitutional rights.  It is important that the exercise of those rights be protected.  However, the public also benefits from a public school learning environment in which the process of educating those in school is conducted without substantial disruption.  The public interest factors weigh in favor of an orderly education environment as opposed to one in which disruption of that environment is likely based on the evidence of record at this stage of the proceedings.

The Court has considered the following additional cases in reaching its conclusion regarding the issuance of a preliminary injunction.  Chandler v. McMinnville School District, 978 F.2d 524 (9th Cir. 1992); Newsom v. Albemarle County School Board, 354 F.3d 249 (4th Cir. 2003); McCormack v. Township of Clinton, 872 F.Supp. 1320 (D.N.J. 1994); Bethel School District No. 403 v. Fraser, 478 U.S. 675, 106 S.Ct. 1359 (1986); Clark v. Dallas Independent School District, 806 F.Supp. 116 (N.D.Tx. 1992); Hohe v. Casey, 868 F.2d 69 (3rd Cir. 1989); Harper v. Poway Unified School District, 445 F.3d 1166 (9th Cir. 2006); Scott v. School Board of Alachua County, 324 F.3d 1246 (11th Cir. 2003); Melton v. Young, 465 F.2d 1332 (6th Cir. 1972); Castorina v. Madison County School Board, 246 F.3d 536 (6th Cir. 2001); West v. Derby Unified School Distrtict No. 260, 206 F.3d 1358 (10th Cir. 2000); Denno v. School Board of Volusia County, 218 F.3d 1267 (11th Cir. 2000); Guiles v. Marineau, 461 F.3d 320 (2nd Cir. 2006); Crosby v. Holsinger, 852 F.2d 801 (4th Cir. 1988); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673 (1976).

The Court has carefully considered the arguments raised by the parties' counsel at the hearing, the memoranda, relevant case law, court documents, and exhibits filed in this case.  The Court has carefully considered each of the Blackwelder factors and their application in reaching its conclusion.  The Court has applied the balancing test articulated in Blackwelder.  The Court concludes plaintiff's motion for a preliminary injunction should be denied.  For the reasons stated,

an analysis of the <u>Blackwelder</u> factors favor maintaining the status quo until the relevant facts are more fully developed and are analyzed pursuant to the relevant case and statutory law addressing the constitutional claims raised by the plaintiff. Therefore, plaintiff's motion for a preliminary injunction is **DENIED**.

    **IT IS SO ORDERED**.

<u>S/ Terry L. Wooten</u>

Terry L. Wooten
United States District Judge

January <u>22</u>, 2007
Florence, South Carolina