IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CANDICE MICHELLE HARDWICK, ) | |
| by and through her Parents and Guardians ) | |
| DARYL LEWIS HARDWICK and ) | |
| PRISCILLA LEA HARDWICK, ) | |
| ) | |
|       Plaintiff, ) | |
| ) | |
|   vs. ) | Civil Action No.: 4:06-cv-1042-TLW |
| ) | |
| MARTHA HEYWARD in her individual ) | |
| capacity as Principal of Latta Middle ) | |
| School, ) | |
| ) | |
| GEORGE H. LIEBENROOD, JR., in his ) | |
| individual capacity as Principal of Latta ) | |
| High School, and the ) | |
| ) | |
| BOARD OF TRUSTEES OF LATTA ) | |
| SCHOOL DISTRICT ) | |
| (Dillon County No. 3), ) | |
| ) | |
|       Defendants. ) | |
| _____) | |

# ORDER

The plaintiff, Candice Michelle Hardwick ("Hardwick" or "plaintiff"), by and through

her parents, Daryl Lewis Hardwick and Priscilla Lea Hardwick, instituted this lawsuit for

damages and injunctive relief against Martha Heyward, in her individual capacity as Principal of

Latta Middle School; George H. Liebenrood, Jr., in his individual capacity as Principal of Latta

High School; and the Board of Trustees of Latta School District (Dillon County No. 3)

("defendants"), which is sued in its official capacity.[1]  The plaintiff alleges the defendants violated her constitutional rights by restricting her wearing of clothing containing images of the Confederate flag and what she describes in the First Amended Complaint as "protest" clothing. In her First Amended Complaint, the plaintiff alleges the following causes of action:  violation of her First Amendment right to freedom of speech and expression; violation of her rights under the South Carolina Constitution; violation of her Fourteenth Amendment right to due process of law; violation of her Fourteenth Amendment right to equal protection under the law; and violation of the reserved right to express heritage.[2]  (Am. Compl., Doc. # 18).

The defendants filed their first motion for summary judgment on June 8, 2009.  (Doc. # 120).  On September 8, 2009, this Court filed an Order granting the defendants' motion for summary judgment in which the Court concluded that the defendants did not violate the plaintiff's First Amendment rights by prohibiting her from  wearing clothing displaying the Confederate flag ("September 2009 Order").  <u>Hardwick ex rel. Hardwick v. Heyward</u>, 674 F. Supp. 2d 725 (D.S.C. 2009) (Doc. # 150).

The plaintiff filed a notice of appeal.  (Doc. # 156).  On December 10, 2010, the United States Court of Appeals for the Fourth Circuit issued an opinion dismissing the appeal and

---

[1] In her initial complaint, the plaintiff names defendants Heyward and Liebenrood in their official and individual capacities. Compl. ¶¶ 1, 3-4 (Doc. # 1).  Although the caption of her First Amended Complaint still suggests the lawsuit is against defendants Heyward and Liebenrood in both capacities, the body of the First Amended Complaint clearly indicates Hardwick is suing these defendants in their individual capacities only.  Am Compl. ¶¶ 1, 3-4 (Doc. # 18).

[2] In her response to a motion to dismiss filed by the defendants, the plaintiff agreed to dismiss Count Five of her First Amended Complaint (violation of the reserved right to express heritage).  (Doc. # 90).  The plaintiff also agreed that her claims for declaratory and injunctive relief were moot.  (Doc. # 90).  In its Order denying the defendants' motion to dismiss, the Court noted the plaintiff stipulated to the dismissal of Count Five and stipulated that her claims for declaratory and injunctive relief were moot.  (Doc. # 104).

remanding the case.  More specifically, the Fourth Circuit stated that "[a]lthough the district court granted summary judgment on [the plaintiff]'s confederate flag clothing claims, it has not yet ruled (or been asked to rule) on her protest clothing First Amendment damages claim." C.H ex rel. Hardwick v. Heyward, No. 09-2390, 2010 WL 5066024 (4th Cir. Dec. 10, 2010) (Doc. # 160).  The Fourth Circuit also noted this Court may consider on remand whether any of the plaintiff's other causes of action involve protest clothing.  Id.  The Fourth Circuit therefore characterized this Court's September 2009 Order (Doc. # 150) as a partial grant of summary judgment that is interlocutory in nature rather than a final judgment.

In light of the Fourth Circuit's decision, this Court directed the plaintiff to file a memorandum in support of her position "in relation to the claim(s) remanded back to this Court . . . , specifically addressing the protest clothing First Amendment claim."  (Doc. # 162).  On March 15, 2011, the plaintiff filed her memorandum but noted that while she limited her brief to addressing the protest clothing First Amendment claim, she also had a Fourteenth Amendment protest clothing claim which she reserved the right to assert.  (Doc. # 175).  The Court entered an Order on March 18, 2011, giving the plaintiff twenty days to file a memorandum which addressed her protest clothing Fourteenth Amendment claim and giving the defendants thirty days to then respond.  (Doc. # 176).  On April 7, 2011, the plaintiff filed a memorandum addressing her protest clothing Fourteenth Amendment claim.  (Doc. # 179).  After being granted an extension (Doc. # 183), the defendants, on May 13, 2011, filed their response in which they indicate they are seeking summary judgment as to all of the plaintiff's remaining claims.  (Doc. # 185).  The plaintiff filed a reply in which she asserted that the defendants should not be able to turn their response into a motion for summary judgment.  (Doc. # 189).  On July 19, 2011, this

Court entered an Order concluding that the defendants' response (Doc. # 185) is a motion for summary judgment, that the Court would treat the plaintiff's reply (Doc. # 189) as a response in opposition, and giving the plaintiff fourteen days to submit any further response she wished to file in opposition to the defendants' motion.  (Doc. # 192).  On August 2, 2011, the plaintiff filed an amended response in opposition to the defendants' motion for summary judgment.  (Doc. # 195).  On August 11, 2011, the defendants filed a reply to the plaintiff's response in opposition.  (Doc. # 198).   A hearing on the defendants' motion for summary judgment was held on November 18, 2011.  (Entry # 204).  The Court has considered the applicable law, arguments of counsel, and memoranda submitted.  This motion is now ripe for disposition.

## FACTS

Plaintiff Candice Michelle Hardwick was a student at Latta Middle School during the 2002-03 and 2003-04 school years and Latta High School during the 2004-05 and 2005-06 school years.  (Am. Compl., Doc. # 18).  Latta Middle School and Latta High School are located in Dillon County, South Carolina and are part of Dillon School District Number Three, also known as Latta School District.  Defendant Martha Heyward ("Heyward") was the principal of Latta Middle School during the events in question, and defendant George H. Liebenrood, Jr. ("Liebenrood") was the principal of Latta High School.  Defendant Board of Trustees of Latta School District (Dillon County No. 3) ("Board of Trustees" or "Board") is a "body politic and corporate" that is amenable to suit under South Carolina law.  See S.C. Code Ann. § 59-17-10. The Board of Trustees has the authority to manage and control schools within Latta School District.  See S.C. Code Ann. § 59-19-10.  The plaintiff asserts the Board has the "power to formulate, implement, and interpret a dress code policy for all students."  Am. Compl. ¶ 5.

In the First Amended Complaint ("complaint"), the plaintiff alleges numerous incidents when she was asked to cover up or remove shirts with depictions of the Confederate flag. One such instance occurred in early 2003, and three more occurred in January and February 2004. Am. Compl. ¶¶ 16-19.

The first incident involving what the plaintiff describes as a "protest" shirt allegedly occurred in mid-February 2004. Am. Compl. ¶ 20. The plaintiff asserts Heyward denied her the right to wear a protest shirt which contained an image of the United States flag and the words "Old Glory Flew over legalized slavery for 90 years!" (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "H" (doc. # 1, attach. 2)). Id. Shortly after wearing this protest shirt, Hardwick alleges she was sent to the office for refusing to change another t-shirt containing the image of the Confederate flag. Id. ¶ 21. Hardwick's mother allegedly was called and, upon arriving at the school, spoke with the Latta School District Superintendent, Dr. John Kirby, in support of her daughter's actions. Id. According to the complaint, Hardwick received in-school suspension for the rest of the day and was denied lunch. Id. In early March 2004, the plaintiff asserts she was written up at Heyward's direction for wearing a different shirt with the Confederate flag on it, made to change the shirt, and threatened with removal from the track team if she wore another Confederate shirt. Id. ¶ 22.

After this incident, Hardwick's parents wrote a letter to Superintendent Kirby, dated April 12, 2004, in which they indicated their belief that their daughter had a First Amendment right to wear Confederate items (a copy of the letter is attached to the plaintiff's original complaint as Exhibit "L" (doc. # 1, attach. 3)). They requested that Kirby remove any disciplinary record imposed relating to Hardwick's wearing of Confederate clothing and

5

reconsider allowing students to wear clothing depicting the Confederate flag. The parents also state in this letter that their daughter had worn shirts which "had no Confederate Battle flags on them, but were pure protected political speech and banning them constitutes a clear violation of the First Amendment." Harold Kornblut, then Chairman of the Board of Trustees for Dillon School District Three, responded to Hardwick's parents (a copy of Kornblut's letter, dated May 12, 2004, is attached to the plaintiff's original complaint as Exhibit "N" (doc. # 1, attach. 5)). Kornblut thanked the Hardwicks for the presentation of their concerns at the Latta School District monthly board meeting. Kornblut also described past incidents of racial discord in the school district and a recent incident that allegedly occurred when Liebenrood approached a student wearing a shirt featuring a Confederate flag. Kornblut concluded that Heyward's actions at the middle school would remain undisturbed.

Around the time these letters were exchanged, Hardwick alleges she "was screamed at and berated by a school administrator because [she] returned to school after hours wearing a 'protest shirt' that said: 'Offended by School Censorship of Southern Heritage'" (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "M" (doc. # 1, attach. 3)). Am. Compl. ¶ 26. This shirt does not contain a full or clear image of the Confederate flag but has what could be discerned as a Confederate flag and its coloring superimposed on the lettering.

Hardwick's parents, in a letter dated November 10, 2004, again requested Kornblut consider the concerns outlined in their previous letter and requested he reconsider the decision set forth in his responding letter (a copy of the November 10th letter is attached to the plaintiff's original complaint as Exhibit "O" (doc. # 1, attach. 5)). In a letter dated December 17, 2004, Kornblut informed Hardwick's parents that the Board of Trustees affirmed its earlier decision

upholding Heyward's actions at the middle school and declined their request for a rehearing (a copy of this letter is attached to the plaintiff's original complaint as Exhibit "P" (doc. # 1, attach. 5)).

Several months after this exchange of letters, Hardwick allegedly wore a series of protest shirts on a single day in May 2005.  Am. Compl. ¶ 30.  According to the complaint, she began the day wearing a shirt containing the words "Daddy's Little Redneck" and an image of a Confederate hat with a Confederate flag on it (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "Q" (doc. # 1, attach. 5)).  Id.  Additionally, the shirt has an image of the Confederate flag that can be discerned in the background behind the hat.  Hardwick asserts she was called out of class and made to change this shirt.  Id.  Hardwick allegedly then put on a shirt with the words "Jesus and the Confederate Battle Flag, Banned from our Schools but Forever in our Hearts" (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "R" (doc. # 1, attach. 6)).  Id.  The shirt contained the images of five flags, two of which were crossed out by red circles with lines through them.  Hardwick asserts she was instructed to change this shirt.  Id.  She then allegedly proceeded to produce in succession three more shirts she describes as protest shirts.  Id.  The first shirt contained the words "Honorary Member of the Federal Bigot Institutions" and "FBI" in large lettering (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "S" (doc. # 1, attach. 6)).  Id.  The second shirt contained the words "Our School Supports Freedom of Speech for All Except Southerners" (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "T" (doc. # 1, attach. 6)).  Id.  The third shirt contained the words "Public School Should Educate Not Discriminate Against Southern Heritage" (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit

"U" (doc. # 1, attach. 6)).  Id.  All three of these shirts had what could be discerned as a Confederate flag and its coloring superimposed on the lettering.  Hardwick asserts she was not allowed to wear any of these shirts even though, in her view, none displayed the Confederate flag.  Id.

At the start of the 2005-2006 school year, Hardwick alleges she "wore a shirt for several days, without incident or disruption, depicting the Confederate Monument and flag and the South Carolina State House" (a photo of the shirt is attached to the plaintiff's original complaint as Exhibit "V" (doc. # 1, attach. 6)).  Am. Compl. ¶ 31.  When the shirt was brought to Liebenrood's attention, he allegedly took Hardwick out of class and made her change it.  Id. Hardwick alleges she complied but told Liebenrood he was violating her civil and constitutional rights.  Id.

In a letter dated August 26, 2005, counsel for the plaintiff requested to appear before the Board of Trustees at its September 13, 2005 meeting (a copy of this letter is attached to the plaintiff's original complaint as Exhibit "W" (doc. # 1, attach. 6)).  Kornblut responded that this request to appear before the Board was denied because it would be inappropriate for the Board to communicate directly with Hardwick's legal counsel (a copy of this letter, dated September 8, 2005, is attached to the plaintiff's original complaint as Exhibit "W-1" (doc. # 1, attach. 6)).

The plaintiff asserts her attorney sent a final letter dated February 10, 2006, attempting to resolve the situation (a copy of this letter is attached to the plaintiff's original complaint as Exhibit "X" (doc. # 1, attach. 7)).  Am. Compl. ¶ 33.  In this letter, the attorney alleges that "the school has even banned [Hardwick]'s attempts at legitimate dissent of [its] actions."  The plaintiff's attorney makes a similar allegation in a different letter dated February 24, 2006 (a

copy of this letter is attached to the plaintiff's original complaint as Exhibit "Z" (doc. # 1, attach. 8)). The Board's attorney responded to these letters by stating that the school "administration has determined that the wearing of the Confederate flag and/or direct references to the Confederate flag interfered with the orderly operations of their schools, i.e., disrupted the educational environment" (a copy of this letter, dated March 24, 2006, is attached to the plaintiff's original complaint as Exhibit "Y" (doc. # 1, attach. 7)). The attorney directly addresses the protest shirts to which the plaintiff's attorney refers in his letters, asserting that the school district does not ban such shirts unless they contain Confederate flags and that the district's position is it has not prohibited students from wearing such shirts. In closing, the Board's attorney reiterates that protest shirts not depicting the Confederate flag may be worn. The plaintiff filed this lawsuit about a week after the date of this letter. (Doc. # 1).

In the First Amended Complaint, Hardwick asserts "[n]one of the protest shirts contained the Confederate Battle flag and were apparently banned solely for their written content." Am. Compl. ¶ 37. She alleges that at the time of the First Amended Complaint's filing, she had not worn any Confederate flag or protest shirts since September 2005. Id. ¶ 35. However, later in the complaint, Hardwick alleges she was told to change shirts when she wore the "Jesus and the Confederate Battle Flag" shirt (Exhibit R) to school again after receiving the March 24, 2006 letter sent by the Board's attorney and written up when a school official discovered she was wearing a Confederate flag belt buckle. Id. ¶¶ 40.3-40.4.

### SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the moving party is entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  As the party seeking summary judgment, the moving party bears the initial responsibility of informing this Court of the basis for its motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This requires that the moving party identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine dispute of material fact.  Celotex, 477 U.S. at 323; see also Anderson, 477 U.S. at 249.

Though the moving party bears this initial responsibility, the nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324; see Fed R. Civ. P. 56(e).  In satisfying this burden, the nonmoving party must offer more than a mere "scintilla of evidence" that a genuine dispute of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must produce evidence on which a jury could reasonably find in their favor.  See Matsushita, 475 U.S. at 587.

In considering a motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party.  See Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990).  Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial."  Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

## <u>DISCUSSION</u>

### a. Preservation of Claims Relating to Protest Clothing

In their motion for summary judgment (Doc. # 185), the defendants assert that the plaintiff abandoned any and all claims related to protest clothing.  In a previous Order denying the plaintiff's motion for a preliminary injunction, the Court noted that the defendants had agreed to allow the plaintiff to wear some of the shirts she identified as protest shirts, specifically the shirts depicted as Exhibits H, M, U, T, and K to the plaintiff's original complaint.[3]  (Doc. # 60, pp. 2-3 n.1).  The Court thus indicated these shirts were not in dispute and not before the Court at that time.  The Court made a similar statement in its September 2009 Order granting partial summary judgment to the defendants.  (Doc. # 150, p. 4 n.3).  The defendants now argue that by not raising the protest clothing issue during the previous summary judgment proceeding, the plaintiff abandoned any claims related to the protest clothing.

Federal Rule of Civil Procedure 56(a) provides that a party moving for summary judgment is to identify each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  In their previous motion for summary judgment (Doc. # 120), the defendants presented no arguments in connection with the protest shirts.  As a result, this Court did not rule on the issue in its September 2009 Order.  Further, the Court finds no basis under Rule 56 or any of the other authority presented by the parties to impose an obligation on the plaintiff to raise the issue in her response when the defendants have not moved for summary

---

[3] Hardwick does not allege she wore the shirt depicted in Exhibit K but rather she alleges the shirt was worn by another student and this student was asked to cover up the shirt.  Am. Compl. ¶ 23.  No violation of Hardwick's constitutional rights stemmed from another student wearing a shirt that he or she was asked to cover.

judgment on the issue in their motion.  Therefore, the Court does not find that the plaintiff abandoned or failed to preserve her claims relating to the protest clothing.

**b. Violation of the Right to Freedom of Speech and Expression**

The plaintiff's primary allegation is that she possessed a right to wear the shirts described in the First Amended Complaint as outlined and that her First and Fourteenth Amendment rights to freedom of speech and expression were violated by school officials restricting her wearing of these shirts.  Am. Compl.  The Court's September 2009 Order granting partial summary judgment to the defendants (Doc. # 150) dealt with this claim in connection with the shirts that clearly depict a Confederate flag.  This Order will address the remaining "protest" shirts or, more specifically, those depicted in Exhibits H, M, R, S, T, and U to the plaintiff's original complaint (Doc. # 1).[4]  For the reasons set forth below, the restrictions the defendants allegedly imposed on the plaintiff's wearing of these shirts did not violate Hardwick's First Amendment rights.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. Amend. I.  Freedom of speech is a significant constitutional right that can only be restricted in limited circumstances.  Although "[t]he First Amendment guarantees wide freedom in matters of adult public discourse[,] . . . [the Supreme Court has held] the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings."  Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 682 (1986) ("Fraser").  For while students do not "shed their constitutional rights to freedom of speech or

---

[4] The plaintiff argues the shirt shown in Exhibit V to her original complaint, which contains a depiction of the Confederate Monument and flag and the South Carolina State House, also should be considered a protest shirt.  However, this shirt contains a clear image of the Confederate flag and is thus covered by this Court's September 2009 Order which concluded the defendants had demonstrated a reasonable forecast of disruption in connection with such shirts.

expression at the schoolhouse gate," Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969), teachers and school officials are also not compelled "'to surrender control of the American public school system to public school students,'" Fraser, 478 U.S. at 686 (quoting Tinker, 393 U.S. at 526 (Black, J., dissenting)).   As a result, under limited circumstances, students may be prohibited from engaging in expressive conduct in school that the state could not prohibit in other contexts.  See Governor Wentworth Reg. Sch. Dist. v. Hendrickson, 421 F. Supp. 2d 410, 419 (D.N.H. 2006) ("Hendrickson").  Courts are required to examine students' alleged First Amendment violations "'in light of the special characteristics of the school environment.'"   Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 266 (1988) (quoting Tinker, 393 U.S. at 506) ("Kuhlmeier").

In Tinker v. Des Moines Independent Community School District, the Supreme Court addressed the constitutionality of school policies restricting students' rights to free expression. In this seminal decision, the Supreme Court held as unconstitutional a school district's prohibition of black armbands worn by students to exhibit opposition to United States involvement in the Vietnam War.  Tinker, 393 U.S. at 514.  The Court reasoned that "[i]n the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views."  Id. at 511.  Consequently, school officials could impose a "prohibition of expression of one particular opinion" only if "necessary to avoid material and substantial interference with schoolwork or discipline."  Id.  Mere "undifferentiated fear or apprehension of disturbance" is not enough.  Id. at 508.  Rather, school officials must demonstrate facts or evidence "which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities."  Id. at 514; see also Quarterman v.

Byrd, 453 F.2d 54, 58 (4th Cir. 1971); Phillips v. Anderson Cnty. Sch. Dist. #5, 987 F. Supp. 488, 492 (D.S.C. 1997).

Courts have not required school officials to wait until a disruption actually occurs before prohibiting the student speech in question. See Quarterman, 453 F.2d at 58-59; B.W.A. v. Farmington R-7 Sch. Dist., 508 F. Supp. 2d 740, 747 (E.D. Mo. 2007) (citing Chandler v. McMinnville Sch. Dist., 978 F.2d 524, 529 (9th Cir. 1992)).   School officials may take reasonable measures to prevent incidents of disorder or disruption from occurring.  See, e.g., Melton v. Young, 465 F.2d 1332, 1335 (6th Cir. 1972); Hendrickson, 421 F. Supp. at 421; Phillips, 987 F. Supp. at 492.  A critical issue in the analysis is thus whether school officials "'acted on what [they] reasonably believed to be actual evidence that the shirts [at issue] would be disruptive.'"  Hendrickson, 421 F. Supp. 2d at 421 (quoting Castorina v. Madison Cnty. Sch. Bd., 246 F.3d 536, 545 (6th Cir. 2001) (Kennedy, J., concurring)).

In a decision seventeen years after Tinker, Bethel School District No. 403 v. Fraser ("Fraser"), the Supreme Court upheld a school district's sanctioning of a student for delivering a speech at a school assembly in which he employed "an elaborate, graphic, and explicit sexual metaphor."  Fraser, 478 U.S. at 685.  The sanction was upheld without the school district being required to meet the standard described in Tinker.  Id. at 677-86.  While courts have not completely agreed on the full impact of Fraser, there is a general consensus that Fraser allows a school to regulate speech that is "vulgar," "lewd," and "plainly offensive" without needing to demonstrate a reasonable forecast of disruption.  See Fraser, 478 U.S. at 680-86; Kuhlmeier, 484 U.S. at 271-72 & n.4; Newsom v. Albemarle Cnty. Sch. Bd., 354 F.3d 249, 256 (4th Cir. 2003); Chandler, 978 F.2d at 529.

14

**1. Whether There is Sufficient Evidence the Defendants Restricted Hardwick's Wearing of the Protest Shirts**

The defendants assert that Hardwick presents insufficient evidence to create a genuine dispute of fact over whether they actually prohibited her from wearing the protest shirts.  In her briefing, Hardwick cites portions of the First Amended Complaint (Doc. # 18), which is verified, in support of her assertion that the alleged events involving the protest shirts occurred.  See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.").  Hardwick also refers to portions of her own deposition testimony, which are consistent with the allegations in the First Amended Complaint.  See Hardwick Dep. p. 114 (describing February 2004 incident involving Exhibit H), p. 123 (describing May 2005 incident involving Exhibits R, S, T, and U) (Doc. 195, attach. 1).[5] Additionally, in her response to the defendants' motion for summary judgment, Hardwick cites to a portion of Heyward's deposition testimony where, according to Hardwick, Heyward testifies she remembers an incident involving a protest shirt and remembers explaining to Hardwick's parents why the clothing was banned.  (Doc. # 195, p. 20-21).  However, on the pages of Heyward's deposition cited by Hardwick, Heyward testifies that "the only time . . . [she] asked Ms. Hardwick to remove the shirt she was wearing, it was the Confederate flag."  Heyward Dep. p. 32:23-25 (Doc. # 195, attach. 2).  Heyward thus indicated that the only shirts she recalled

---

[5] In her deposition testimony, Hardwick also describes an incident where she wore a protest shirt after school hours to track practice and received permission to return to school to pick up a Robert E. Lee shirt from the office.  Hardwick Dep. p. 130-31 (Doc. # 195, attach. 1). She testifies she was disciplined by a school administrator for wearing the protest shirt while picking up the Robert E. Lee shirt.  Id.  Hardwick appears to be referring to the incident involving Exhibit M described in paragraph 26 of the First Amended Complaint.

restricting were those containing the Confederate flag. In regards to the facts of this case, as the Court is required to do, the Court accepts the plaintiff's version of the facts in analyzing the summary judgment motion filed by the defendants. The Court finds the plaintiff's asserted evidence, including the verified First Amended Complaint and Hardwick's deposition testimony, is more than a mere scintilla. See Anderson, 477 U.S. at 252. However, for the reasons stated below, summary judgment is granted in favor of the defendants.

### 2. Exhibit R

According to the First Amended Complaint and Hardwick's deposition testimony, Hardwick wore four of the shirts she describes as protest shirts (Exhibits R, S, T, and U) on a single day in May 2005 while she was enrolled as a student at Latta High School. Am. Compl. ¶ 30. She donned the shirts in succession after beginning the day wearing a shirt that clearly displayed a Confederate flag (Exhibit Q). The first protest shirt Hardwick allegedly wore on this day in May 2005 contained the words "Jesus and the Confederate Battle Flag, Banned from our Schools but Forever in our Hearts" (Exhibit R) and the images of five flags, two of which were crossed out by red circles with lines through them. Hardwick also alleges she wore this shirt after her attorney received the March 24, 2006 letter from counsel for the Board of Trustees, which stated protest shirts not depicting the Confederate flag may be worn and denied such shirts were ever banned. Am. Compl. ¶ 40.3.

This Court's September 2009 Order granting partial summary judgment to the defendants includes Exhibit R among the Confederate flag shirts it addresses. (Doc. # 150, p. 4 n.3). The Court reaffirms this earlier ruling in light of the direct reference on the shirt to the banning of the Confederate flag and the partially crossed-out image of a flag on the shirt that appears to be a

Confederate flag. Without question, a school official could reasonably infer the crossed-out flag to be the Confederate flag. Notably, the Supreme Court has found in favor of a school official who "reasonably viewed" a banner as promoting illegal drug use. See Morse v. Frederick, 551 U.S. 393, 401-02, 410 (2007).[6]  In the case at bar, assuming school officials restricted Hardwick's wearing of the shirts at issue, they could have "reasonably viewed" Exhibit R and Exhibits M, S, T, and U as Confederate flag shirts for which they possessed a reasonable forecast of substantial disruption. See id. In addition, the Court does not find that restricting Hardwick's wearing of Exhibit R after the Board's attorney sent the March 2006 letter, which stated protest shirts not depicting the Confederate flag may be worn, was inconsistent with the letter because school officials could reasonably conclude the shirt depicts a Confederate flag. See id.

### 3. Exhibits S, T, and U

After not being permitted to wear Exhibit R, Hardwick allegedly then changed into the shirts portrayed in Exhibits S, T, and U in succession and was prohibited from wearing each

---

[6] There was no majority opinion in Morse. Justice Scalia joined Chief Justice Roberts' opinion of the Court. Justice Thomas filed a concurrence in which he joined the Court's opinion "because it erodes Tinker's hold in the realm of student speech" even though he would prefer "to dispense with Tinker altogether." Morse, 551 U.S. at 422 (Thomas, J., concurring). Justice Alito, with whom Justice Kennedy joined, also wrote a concurring opinion in which he joined the opinion of the Court "on the understanding that (1) it goes no further than to hold that a public school may restrict speech that a reasonable observer would interpret as advocating illegal drug use and (2) it provides no support for any restriction of speech that can plausibly be interpreted as commenting on any political or social issue, including speech on issues such as the wisdom of the war on drugs or of legalizing marijuana for medicinal use." Id. (Alito, J., concurring) (internal quotation marks omitted). Justice Breyer concurred in the Court's judgment in part and dissented in part, arguing that the Court "should simply hold that qualified immunity bars the student's claim for monetary damages and say no more." Id. at 425 (Breyer, J., concurring in the judgment in part and dissenting in part). Justice Stevens filed a dissenting opinion which Justices Souter and Ginsburg joined. Chief Justice Roberts strikes a balance between students' First Amendment rights and the reality that school officials must make on-the-spot decisions based on the facts before them on a day-to-day basis.

shirt.  Am. Compl. ¶ 30.  Exhibits S, T, and U all have lettering on them and a discernible Confederate flag and its coloring superimposed on the lettering.  The defendants argue Exhibits S, T, and U should be considered Confederate flag shirts covered by this Court's September 2009 Order.

Assuming Hardwick was prohibited from wearing these shirts, it would be reasonable for an administrator to conclude Exhibits S, T, and U each contained a Confederate flag and its coloring superimposed on the shirt's lettering.  See Morse, 551 U.S. at 401-02, 410 (focusing on whether a school official "reasonably viewed" a banner as promoting illegal drug use).  Such a conclusion is even more reasonable when viewed in light of the circumstances confronting school administrators on the day Exhibits S, T, and U were worn—a student with a history of wearing Confederate flag shirts, despite being told such clothing was not allowed, who began the day wearing a shirt clearly depicting the Confederate flag and who repeatedly changed into shirts with discernible Confederate flags superimposed on their lettering.  As a result, because it would be reasonable for school officials to conclude Exhibits S, T, and U did display Confederate flags, the defendants possessed substantial facts which reasonably supported a forecast of disruption based on the evidence discussed in this Court's September 2009 Order in connection with the shirts that clearly depicted Confederate flags.[7]  See Doc. # 150, pp. 6-19.  As the school officials involved in the incidents alleged by the plaintiff could have reasonably concluded Exhibits S, T,

---

[7] The plaintiff presents a lack of evidence that Principal Liebenrood distinguished between Exhibits R, S, T, and U and the other shirts Hardwick allegedly was not allowed to wear while she was enrolled at the high school.  At his deposition, Liebenrood testified that "[t]he only shirts [he] . . . banned dealing with the Confederacy [were] articles of clothing that depicted the Confederate flag  . . . ."  Liebenrood Dep. p. 55:7-11 (Doc. # 175, attach. 5)).

and U were Confederate flag shirts, their conduct in restricting the wearing of them, if it occurred, did not violate a First Amendment right.

### 4. Exhibit M

Hardwick alleges she was "screamed at and berated by a school administrator" for returning to school after school hours wearing the shirt shown in Exhibit M.  Am. Compl. ¶ 26.  Similar to Exhibits S, T, and U, this shirt also has a discernible Confederate flag and its coloring superimposed on its lettering.  Therefore, assuming Hardwick's allegations are true, it was reasonable for the school administrator involved in the incident to conclude the shirt displayed a Confederate flag and its coloring.  See Morse, 551 U.S. at 401-02, 410 (focusing on whether a school official "reasonably viewed" a banner as promoting illegal drug use).  Because it was reasonable for the school administrator to believe Exhibit M portrayed a Confederate flag, the defendants possessed substantial facts which reasonably supported a forecast the shirt would cause substantial disruption based on the evidence discussed in this Court's September 2009 Order with respect to the shirts that clearly displayed Confederate flags.  See Doc. # 150, pp. 6-19.  Again, the school administrator involved in this incident could have reasonably concluded Exhibit M was a Confederate flag shirt for which he or she possessed a reasonable forecast of disruption.[8]

---

[8] The Court also notes that the plaintiff alleges in the First Amended Complaint only that she was "screamed at and berated" for wearing the shirt pictured in Exhibit M.  She neither alleges being written up, suspended, or punished in some way for wearing the shirt nor alleges being told not to wear the shirt, and her deposition testimony provides no additional elaboration.  See Hardwick Dep. p. 130-31 (Doc. # 195, attach. 1).  This lawsuit is brought pursuant to 42 U.S.C. § 1983.  Some courts have held that allegations of "mere threats or verbal abuse, without more, do not state a cognizable claim under § 1983."  Wilson v. McKellar, 254 Fed. Appx. 960, 961 (4th Cir. 2007); see also Carter v. Morris, 164 F.3d 215, 219 n.3 (4th Cir. 1999).

### 5. Exhibit H

The defendants concede that the shirt pictured in Exhibit H does not contain imagery of the Confederate flag. Nonetheless, they assert that, under Fraser and Tinker, their restriction of the shirt did not violate Hardwick's First Amendment rights. The shirt pictured in Exhibit H contains an image of the United States flag and says "Old Glory Flew over legalized slavery for 90 years!"

Assuming Hardwick was prohibited from wearing Exhibit H, this shirt falls within the Fraser standard for speech that is clearly "plainly offensive," as the image of the United States flag and direct reference to legalized slavery could be viewed by students and school administrators as glorifying or endorsing slavery. Fraser, 478 U.S. at 680-86; see also Morse, 551 U.S. at 401-02, 410 (focusing on whether a school official "reasonably viewed" a banner as promoting illegal drug use). Alternatively, applying the Tinker standard, the defendants did not violate Hardwick's First Amendment rights by restricting the wearing of Exhibit H. It would be reasonable for school officials to view Exhibit H as plainly offensive to many students and to anticipate disruption in light of what students could view this image as promoting in a school setting. See Morse, 551 U.S. at 401-02, 410. This Court cited, in its September 2009 Order, evidence of prior incidents of racial tension in Latta School District and testimony by students and officials of racial tension during and after the time Hardwick attended school in the district. See Doc. # 150, pp 14-18. This same evidence of racial tension that supported regulating Confederate flag clothing applies equally to support a reasonable forecast that restricting the shirt

depicted in Exhibit H was necessary to prevent substantial disruption or interference with school activities.[9]

### c. Violation of the Right to Equal Protection of the Law

Hardwick contends that the defendants violated her Fourteenth Amendment right to equal protection of the law by selectively enforcing the dress code. She asserts Heyward and Liebenrood "ordered [Hardwick] to remove her shirts despite the fact that they and other administrators and teachers at Latta High School . . . allowed other students to wear controversial 'message' tee shirts and similar items of clothing." Am. Compl. ¶ 40. She argues this apparel worn by other students frequently was "inscribed with and . . . displayed sayings and emblems indicative of ethnocentric, political and religious causes which are offensive to substantial segments of the community of Dillon County, including members of the student body at Latta Middle School." Id. Specifically, Hardwick alleges the defendants "turned a blind eye" to male students who wore their pants "so low that their underwear is exposed" as well as students who wore the following t-shirts: "FUBU (For Us By Us), Baby Phat, Gang tees, 'Black power,' Malcolm X, Black Pride Homeland, Gay Pride, 'Gay by Nature and Absolutely Fabulous by

_____

[9] Hardwick cites to Lowry v. Watson Chapel School District, 540 F.3d 752 (8th Cir. 2008), in her memorandum in opposition to the defendants' motion for summary judgment. The Court does not find this decision persuasive as it is factually distinguishable in that it involved students who wore black armbands protesting a school district's mandatory school uniform policy. Id. at 756. At the hearing on the defendants' motion for summary judgment, Hardwick's attorney referenced Sypniewski v. Warren Hills Regional Board of Education, 307 F.3d 243 (3d Cir. 2002). The Court also finds Sypniewski factually distinguishable in that it involved a student who was suspended for violating a school district's racial harassment policy and dress code by wearing a "Jeff Foxworthy" t-shirt inscribed with "redneck" jokes to school. Id. at 246. In Sypniewski, the Third Circuit noted there were serious disruptive incidents in the school district that justified banning a range of expression, including likely the Confederate flag, but held that range was not broad enough to encompass the Foxworthy t-shirt. Id. at 254-58. Here, the Court finds the range broad enough to encompass all of the clothing Hardwick alleges she was restricted from wearing.

Choice' . . . , Jamaican Flag, Bob Marley hats, sexually explicit shirts, illegal drugs and alcohol." Am. Compl. ¶¶ 40.1-40.2, 57.  She asserts school administrators ignored her general complaints about offensive clothing worn at school.

Aside from the First Amended Complaint, Hardwick cites other evidence in support of this claim, including her own deposition testimony where she affirms the allegations in the complaint regarding clothing other students wore and regarding school administrators not responding to her general complaints about the clothing being worn.  Hardwick Dep. pp. 127-29 (Doc. # 195, attach. 1).  Her testimony, however, provides little elaboration to the allegations in the complaint.  In addition to her own deposition testimony, Hardwick refers to  affidavits provided by three other students who attended school in Latta School District.  James Dean Hardwick, who is the brother of the plaintiff, states that while he was at Latta High School, "almost every conceivable political, commercial, social, ethnic and racial message was allowed and even encouraged except for one: anything Confederate."  James Hardwick Aff. (Doc. # 49, attach. 2).  Similarly, Charles Thompson avers that "the school allows just about every other imaginable t-shirt[ ] to be worn without punishment at Latta High School" and that "[i]t seems only the Confederate flag kids get picked on by the staff."  Thompson Aff. (Doc. # 49, attach. 3). Finally, Phillip Daniel Hunsinger states that he saw students wearing traditional African clothing, shirts depicting Bob Marley smoking marijuana, Jamaican flag shirts, FUBU shirts, Baby Phat shirts, and students wearing their pants far below their waistline.  Hunsinger Aff. (Doc. # 49,

attach. 4).  Hunsinger also indicates he has not seen students wearing these clothes disciplined for violating the dress code.[10] Id.

This Court's September 2009 Order concluded Hardwick, relying on the Sixth Circuit's decision in Castorina v. Madison County School Board, 246 F.3d 536 (6th Cir. 2001), was arguing under her claim for violation of the right to equal protection of the law that the defendants enforced the dress code in a viewpoint-discriminatory manner.  (Doc. # 150, p. 20). In Castorina, the Sixth Circuit held that "even if there has been racial violence that necessitates a ban on racially divisive symbols, the school does not have the authority to enforce a viewpoint-specific ban on racially sensitive symbols and not others."  Castorina, 246 F.3d at 544.  The plaintiff has not objected to this characterization and therefore the Court will continue to treat the claim as alleging viewpoint discrimination.

While the plaintiff relies on Castorina to support this claim, the Supreme Court addressed the issue of viewpoint discrimination in Tinker.  The Supreme Court noted that the school authorities in Tinker "did not purport to prohibit the wearing of all symbols of political or controversial significance" and that the record showed some students "wore buttons relating to national political campaigns, and . . . the Iron Cross, traditionally a symbol of Nazism."  Tinker, 393 U.S. at 510.  Consequently, the Court concluded that the school authorities in Tinker "singled out" the black armbands for prohibition and held that "the prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with schoolwork or discipline, is not constitutionally permissible."  Id. at

---

[10] The defendants dispute the plaintiff's argument that the dress code was enforced in a viewpoint discriminatory manner and present evidence in support of their assertion that the dress code was enforced against all racially divisive symbols, regardless of viewpoint.  This evidence is recounted in the Court's September 2009 Order.  See Doc. # 150, pp. 23-24.

510-11.  The Supreme Court thus held that the restriction of the particular opinion expressed in Tinker was unconstitutional because the defendants did not demonstrate facts or evidence "which might reasonably have led [them] to forecast substantial disruption of or material interference with school activities."  Id. at 514.  Here, the defendants have demonstrated such facts and offered evidence of substantial disruption and interference with respect to the shirts Hardwick allegedly wore.

At least two circuit courts of appeal, including the circuit that decided Castorina, have expressly stated Tinker applies when a school imposes a restriction on a particular viewpoint. See Morgan v. Plano Indep. Sch. Dist., 589 F.3d 740, 745 (5th Cir. 2009) (holding that the court would apply Tinker "when a school imposes content or viewpoint based restrictions"); M.A.L. ex rel. M.L. v. Kinsland, 543 F.3d 841, 850 (6th Cir. 2008) ("While Tinker requires schools to demonstrate a 'material and substantial interference' with the educational process in order constitutionally to silence a student on the basis of the student's particular viewpoint, Jefferson School District certainly need not satisfy this demanding standard merely to impose a viewpoint-neutral regulation of the manner of Michael's speech to prevent hallway clutter and congestion." (emphasis added)).  The Fourth Circuit has not expressly ruled on this issue but has held the Tinker standard does not apply to a neutral time, place, and manner restriction.  See Glover v. Cole, 762 F.2d 1197, 1203 (4th Cir. 1985).

Although concurring in the decision to remand the case to the district court, at least one judge on the Sixth Circuit panel that decided Castorina recognized a conflict between the majority's analysis and Tinker.  Castorina, 246 F.3d at 547 (Kennedy, J., concurring) (reasoning that a "school would not necessarily be required to prohibit Malcolm X shirts if it prohibits

24

confederate flag shirts" and questioning whether a school could prohibit displaying either shirt "unless it could show evidence that such a display would result in disruption").  A later Sixth Circuit panel also recognized the tension between Castorina, Tinker, and a case the Sixth Circuit decided almost thirty years before Castorina—Melton v. Young, 465 F.2d 1332 (6th Cir. 1972).  See Barr v. Lafon, 538 F.3d 554, 570-71 (6th Cir. 2008).  In Melton, the Sixth Circuit upheld a code of conduct that prohibited "images of the Confederate flag, the Confederate soldier, and the song 'Dixie'" even though the code did not ban "symbols perceived as celebrating the North's defeat of the South in the Civil War, racial equality, or black power."  Id. at 570 (describing the Sixth Circuit's decision in Melton).  The Melton court upheld the ban, "regardless of any viewpoint discrimination because it met the disruption standard set forth in Tinker."  Id. at 570-71 (citing Melton, 465 F.2d at 1335).  The Sixth Circuit reconciled Castorina, Melton, and Tinker by concluding that the Castorina panel's modification of the Melton panel's interpretation of Tinker was based on a Supreme Court decision in the interim—Rosenberger v. Rector & Visitors of the University of Virginia, 515 U.S. 819 (1995).  Barr, 538 F.3d at 571.  In Rosenberger, the Supreme Court held that a university had opened the student activity fund as a limited public forum and could not discriminate on the basis of viewpoint.  Rosenberger, 515 U.S. at 828-30.  The Sixth Circuit held that "Castorina applied the principles set forth in Rosenberger to the high-school setting, holding that schools' regulation of student speech must be consistent with both the Tinker standard and Rosenberger's prohibition on viewpoint discrimination."  Barr, 538 F.3d 571.

In the case before the Court, the plaintiff cites no cases where the Fourth Circuit has applied the analysis of restrictions on student speech in the public school setting that the Sixth

25

Circuit employed in <u>Castorina</u>.  Moreover, the plaintiff provides no authority indicating this Court, under the facts before it, should engage in the forum analysis set forth in <u>Rosenberger</u>. The plaintiff has thus not demonstrated that another standard, besides the one set forth in <u>Tinker</u>, applies to the issue of viewpoint discrimination under the facts currently before the Court. Furthermore, the plaintiff has alluded to no evidence showing that a restriction on the "controversial" clothing that she allegedly saw being worn by other students would meet the <u>Tinker</u> standard.  Therefore, because the defendants have met <u>Tinker</u>'s reasonable forecast of disruption standard with respect to the shirts Hardwick allegedly wore, the Court concludes that no unconstitutional viewpoint discrimination occurred.

Additionally, the defendants sued in their individual capacities—Heyward and Liebenrood—are entitled to summary judgment on this claim because Hardwick has not presented sufficient evidence demonstrating that they personally discriminated against Hardwick's viewpoint.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) ("On the merits, to establish <u>personal</u> liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.").  While Hardwick has asserted evidence of specific incidents where Heyward and Liebenrood restricted shirts she wore, she has not provided evidence of similar specific episodes where these two defendants took no action when they were or should have been aware of other students wearing clothing that violated the dress code.  Indeed, two of the affidavits cited by the plaintiff do not provide specifics as to what other clothing the affiants saw being worn.  <u>See</u> James Hardwick Aff. (Doc. # 49, attach. 2); Thompson Aff. (Doc. # 49, attach. 3).  As for the defendant Board of Trustees, it is also entitled to summary judgment because the plaintiff has presented insufficient evidence demonstrating it

26

had a policy or custom of discriminating against the viewpoint espoused by Hardwick.  See Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994) ("Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.").  Rather, the evidence the plaintiff cites in support of her claim does little more than demonstrate that students may have sometimes "got away" with wearing clothing that violated the dress code or contained racially divisive symbols.  See Defoe v. Spiva, 625 F.3d 324, 337 (6th Cir. 2010).  Hardwick herself references instances in the complaint where she wore clothing depicting the Confederate flag that went unnoticed by school officials.  See Am. Compl. ¶¶ 13, 31.  Such facts do not warrant relief.

For the reasons set forth above and those set forth in this Court's September 2009 Order (Doc. # 150, pp. 19-25), the Court grants summary judgment to the defendants on the plaintiff's claim for violation of the right to equal protection of the law.

**d. Violation of the Right to Due Process of Law**

For the reasons set forth in the Court's September 2009 Order, the defendants are entitled to summary judgment on Hardwick's due process claim as the dress codes at issue are neither facially overbroad nor unconstitutionally vague.  See Doc. # 150, pp. 25-33.  To the extent the plaintiff asserts she did not have notice Exhibits M, R, S, T, and U could not be worn, this Court previously held Hardwick had sufficient notice that Confederate flag clothing was restricted under the applicable dress codes.  See Doc. # 150, p. 32.  This notice also applies to Exhibits M, S, T, and U because they contain discernible Confederate flags superimposed on their lettering and to Exhibit R because it contains a direct reference to the flag and a discernible crossed-out

27

image of the flag.  Also Hardwick does not allege in the First Amended Complaint that she was punished for wearing Exhibits H, M, R, S, T, and U but rather, with respect to Exhibits H, R, S, T, and U, she was told these shirts could not be worn and asked to change shirts.  Am Compl. ¶¶ 20, 26, 30.  As for Exhibit M, she asserts being "screamed at and berated" for wearing it but does not allege being suspended or otherwise punished.  Am. Compl. ¶ 26.  Hardwick was thus given notice that if she wore Exhibits H, M, R, S, T, and U again, she may be subject to sanctions.  See Fraser, 478 U.S. at 686 (holding that "prespeech admonitions of teachers gave adequate warning to Fraser that his lewd speech could subject him to sanctions").

**e. Claims Arising under the South Carolina Constitution**

For the reasons set forth in this Court's September 2009 Order, the Court grants summary judgment to the defendants on the plaintiff's claims under the South Carolina Constitution.  See Doc. # 150, p. 33.

**f. Qualified Immunity**

Under the doctrine of qualified immunity, public officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In Saucier v. Katz, the Supreme Court held that qualified immunity involves a two-step inquiry under which a court must consider (1) whether, "[t]aken in the light most favorable to the party asserting the injury[,] . . . the facts alleged show the officer's conduct violated a constitutional right;" and (2) "whether the right was clearly established."  533 U.S. 194, 201 (2001).  The Supreme Court overruled Saucier to the extent it required these steps to be analyzed in order.  Pearson v. Callahan, 555 U.S. 223,

236 (2009) (holding that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").  In determining whether a right is clearly established, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  Clearly established "means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"  Wilson v. Layne, 526 U.S. 603, 614-15 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

Qualified immunity is not a defense for individuals sued in their official, rather than personal, capacities.  See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985).  Hardwick brings this lawsuit against defendants Heyward and Liebenrood in their personal capacities.  Am Compl. ¶¶ 1, 3-4.

The plaintiff asserts that a reasonable person in the position of Heyward and Liebenrood would have known Hardwick's constitutional rights were being violated.  However, as noted by the Supreme Court, Fraser created uncertainty in the law regarding student free speech rights in the public school setting.  See Kuhlmeier, 484 U.S. at 272 n.4 (disagreeing with the argument that there is "no difference between the First Amendment analysis applied in Tinker and that

applied in <u>Fraser</u>" and noting that the decision in <u>Fraser</u> was not based on a showing of substantial disruption). In <u>Morse v. Frederick</u>, although decided after the events underlying the case at hand occurred, the Supreme Court, in considering whether a student's First Amendment rights were violated when he was suspended after displaying a banner that read "BONG HiTS 4 JESUS" at an off-campus, school-sanctioned activity, again alluded to the shortness of clarity in this area of the law after <u>Fraser</u>. <u>See</u> <u>Morse</u>, 551 U.S. at 404 ("The mode of analysis employed in <u>Fraser</u> is not entirely clear."); <u>id.</u> at 405 ("<u>Fraser</u> established that the mode of analysis set forth in <u>Tinker</u> is not absolute."); <u>id.</u> at 429-30 (arguing the defendant principal in <u>Morse</u> was entitled to qualified immunity (Breyer, J., concurring in the judgment in part and dissenting in part)). An indicator of this uncertainty is the fact there were five different opinions in <u>Morse</u>. At least two circuit courts of appeal also have suggested the law is somewhat unclear after <u>Fraser</u>. <u>See</u> <u>Guiles v. Marineau</u>, 461 F.3d 320, 326 (2d Cir. 2006) ("It is not entirely clear whether <u>Tinker</u>'s rule applies to all student speech that is not sponsored by schools, subject to the rule of <u>Fraser</u>, or whether it applies only to political speech or to political viewpoint-based discrimination."); <u>Baxter v. Vigo Cnty. Sch. Corp.</u>, 26 F.3d 728, 737 (7th Cir. 1994) (noting that <u>Fraser</u> "cast some doubt on the extent to which students retain free speech rights in the school setting"). The Eleventh Circuit, in the context of the Confederate flag, has upheld bans on its display under both <u>Tinker</u> and <u>Fraser</u>. <u>See</u> <u>Scott v. Sch. Bd. of Alachua Cnty.</u>, 324 F.3d 1246, 1249 (11th Cir. 2003) (per curiam); <u>White v. Nichols</u>, No. 02-01712-CV-P-NE, 2006 WL 1594213 (11th Cir. June 12, 2006) (per curiam).

The Eleventh Circuit, in <u>Denno v. School Board of Volusia County, Florida</u>, has also held school administrators entitled to qualified immunity in a lawsuit in which a student alleged his

30

First Amendment rights were violated when he was disciplined for displaying the Confederate flag at school. 218 F.3d 1267, 1275 (11th Cir. 2000). In Fraser, the Supreme Court reasoned that "[t]he undoubted freedom to advocate unpopular and controversial views in schools and classrooms must be balanced against the society's countervailing interest in teaching students the boundaries of socially appropriate behavior." Fraser, 478 U.S. at 681. The Eleventh Circuit noted that some courts, based on this language from Fraser, had applied "a more flexible reasonableness or balancing standard rather than, or in addition to, the Tinker standard." Denno at 1273-74. In light of this legal landscape, the Eleventh Circuit reasoned that qualified immunity protected the school administrators:

> The fact that reasonable jurists have applied Fraser's more flexible standard in cases similar to the instant case is a strong indication that a reasonable school official might see the Tinker-Fraser legal landscape as including the more flexible Fraser standard. . . . The instant case involves display of the Confederate flag during school hours and on school premises. We do not believe that it would be unreasonable for a school official to believe that such displays have uncivil aspects akin to those referred to in Fraser, in that many people are offended when the Confederate flag is worn on a tee-shirt or otherwise displayed. We cannot conclude that only a plainly incompetent school official would have viewed the instant circumstances as implicating legitimate school functions relating to civility, and thus subject to the school's authority under the more flexible Fraser standard to balance the freedom of one student to advocate unpopular and controversial views at school against the school's countervailing interest in teaching students the boundaries of socially appropriate behavior.

Denno, 218 F.3d 1274-75.

After careful consideration, this Court finds that Hardwick's claims against Heyward and Liebenrood are barred by qualified immunity because (1) her constitutional rights were not violated and (2) assuming there was a violation, the right was not clearly established. The Court has outlined above why her rights were not violated. As for the second prong of the Saucier analysis, assuming there was a violation, there are at least two bases for concluding the right was

not clearly established.  First, a reasonable school official in Heyward's or Liebenrood's position could conclude there were substantial facts which reasonably supported a forecast of disruption such that a restriction on clothing displaying the Confederate flag would not violate a student's constitutional rights.  Moreover, a reasonable school official could conclude that the shirts depicted in Exhibits M, S, T, and U contained Confederate flags superimposed on their lettering. Similarly, such an official could conclude that Exhibit R contained a direct reference to the Confederate flag and a partially crossed-out image of the flag.  A reasonable official also could decide there was a forecast of disruption sufficient to justify restricting the wearing of the shirt shown in Exhibit H based on the same substantial facts that justified prohibiting the shirts displaying the Confederate flag.

Second, this Court notes the reasoning in Denno that a reasonable school official could decide restricting the display of the Confederate flag at school is permissible under Fraser.  The Eleventh Circuit in Denno stated "common experience . . . teaches that many people perceive the [Confederate] flag as offensive, constituting either a racist message or at least reflecting an uncivil lack of sensitivity to the sensibilities of many people."  Denno, 218 F.3d at 1275 n.6. Based on this common experience described in Denno and the past incidents of racial tension in Latta School District, a reasonable official, after "balancing the freedom of one student to advocate unpopular and controversial views" with "society's countervailing interest in teaching students the boundaries of socially appropriate behavior," could decide that restricting the clothing at issue in this lawsuit was appropriate.  Fraser, 478 U.S. at 681.  Applying Fraser, a reasonable official also could decide that the depictions of the Confederate flag on Hardwick's

shirts and the image and wording on Exhibit H constitute "plainly offensive" speech that may be restricted without meeting <u>Tinker</u>'s disruption standard.

In sum, it would not be clear to a reasonable school official in the situation confronted by Heyward and Liebenrood that his or her conduct was unlawful.  See <u>Saucier</u>, 533 U.S. at 202. On the basis of qualified immunity, these defendants are therefore entitled to summary judgment with respect to the plaintiff's claims against them.[11]

## <u>CONCLUSION</u>

For the reasons set forth herein, the defendants' motion for summary judgment (Doc. # 185) is **GRANTED** as to all claims against all defendants remaining in this case after the Court's September 2009 Order (Doc. # 150).  In summary, this Court grants summary judgment in favor of defendants Martha Heyward, George H. Liebenrood, Jr., and the Board of Trustees of Latta School District (Dillon County No. 3).  Summary judgment is also hereby **GRANTED** to defendants Heyward and Liebenrood on all of the plaintiff's claims because these defendants are entitled to qualified immunity.  As no claims remain to be resolved, this case is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**

s/Terry L. Wooten
TERRY L. WOOTEN
United States District Judge

March 8, 2012

Florence, South Carolina

---

[11] The plaintiff also argues the application of qualified immunity here would be contrary to public policy.  However, the plaintiff has not presented a sufficient basis for the Court to reach such a conclusion.